**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**EASTERN DIVISION**

**KENNETH HUNT** **PLAINTIFF**

**v.** **2:03CV00194-WRW**

**HAROLD SMITH, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES,** ***et al.*** **DEFENDANTS**

**ORDER**

Pending is Defendants' Second Motion for Summary Judgment (Doc. No. 246).[1] Plaintiff has responded (Doc. No. 255). Defendants' Motion is GRANTED in part and DENIED in part.

## I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided on purely legal grounds.[2] The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.[3]

The Court of Appeals for the Eighth Circuit has cautioned that summary judgment is an extreme remedy that should only be granted when the movant has established a right to the judgment beyond controversy.[4] Nevertheless, summary judgment promotes judicial economy by

---

[1]The motion was filed by Defendants Smith, Bond, Kennedy, Thomas, Scott, and Wilson. Summary judgment was previously granted in favor of many of the other defendants in the case. Doc. No. 207.

[2]*Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56.

[3]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

[4]*Inland Oil & Transport Co. v. United States*, 600 F.2d 725, 727 (8th Cir. 1979).

preventing trial when no genuine issue of fact remains.[5] I must view the facts in the light most favorable to the party opposing the motion.[6] The Eighth Circuit has also set out the burden of the parties in connection with a summary judgment motion:

> [T]he burden on the party moving for summary judgment is only to demonstrate, *i.e.*,"[to point] out to the District Court," that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.[7]

Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.[8]

## II. BACKGROUND

### A. Factual History[9]

Plaintiff filed a § 1983 action against multiple defendants who allegedly violated Plaintiff's constitutional rights. On December 20, 2000, Kenneth Hunt was arrested in Marianna for driving while intoxicated. The arresting officer was Harold Smith. Smith was allegedly joined by Defendants Kennedy and Bonds. Allegedly, Hunt was not given a field sobriety test,

---

[5]*Id.* at 728.

[6]*Id.* at 727-28.

[7]*Counts v. MK-Ferguson Co.*, 862 F.2d 1338, 1339 (8th Cir. 1988) (quoting *City of Mt. Pleasant v. Associated Elec. Coop.,* 838 F.2d 268, 273-74 (8th Cir. 1988) (citations omitted)).

[8]*Anderson*, 477 U.S. at 248.

[9]On November 15, 2006, after a hearing in the case, the Court issued an Order granting partial summary judgment. Doc. No. 207. The factual history section is reproduced in relevant part from that Order.

and was taken to the city jail where he was strip searched. According to Hunt, the Chief of Police, Steve Davis, was present at the time Hunt was brought to the jail.

After the DWI charges were dismissed, Hunt maintains that he was harassed by various Marianna police officers. According to Hunt, he was illegally stopped, searched, and threatened with arrest by Defendant Thomas.

After this, Hunt was stopped and searched by Defendant Scott, and by Defendant Greer. Hunt and other Marianna citizens attended a City Council meeting to protest Hunt's treatment. Hunt was later arrested for theft of property by Defendants Wilson and Scott. The arrest warrant was signed by Judge Felton. These charges were eventually dismissed.

Hunt alleges that Defendants Smith, Bond, Kennedy, Scott, Thomas, Wilson, and Greer violated his constitutional rights when they arrested him for DWI without probable cause, and unreasonably stopped and searched him on several occasions. He also alleges that Defendants Scott and Wilson violated his constitutional rights when a warrant for his arrest was issued without probable cause.

**B. Procedural History**

On November 11, 2006, this Court granted summary judgment on all of Plaintiff's claims, except those involving Defendants: Smith, Bond, Kennedy, Thomas, Scott, Greer, and Wilson.[10]

In connection with Smith, Bond, and Kennedy, the Court's Order granting summary judgment read:

> Hunt submitted sufficient evidence to sustain his §1983 claims against Smith, Bond, and Kennedy. Hunt alleges that these officers unreasonably arrested him for DWI, in violation of the Fourth Amendment. To prevail on this claim, Hunt must (1) show that the officers had no probable cause to arrest

[10]Doc. No. 207.

> him, and (2) he must raise a genuine issue of material fact about whether reasonable officers would have known that their conduct violated the Fourth Amendment.[11] Hunt maintains that he was walking down the street when he was arrested, and the officers did not give him a sobriety test before they took him to jail. There is no testimony from the arresting officers refuting Hunt's version of events, or explaining the facts and circumstances confronting them at the time of Hunt's arrest. Therefore, Hunt's assertions create a fact question about the reasonableness of this arrest.

In connection with Defendants Thomas and Scott, the Order stated:

> Likewise, Hunt submitted sufficient evidence to sustain his § 1983 claims against Thomas, Scott, and Greer.[12] These officers allegedly unreasonably detained and searched Hunt in violation of his Fourth Amendment rights. Whether a police officer is entitled to qualified immunity against such allegations depends on the "objective legal reasonableness" of the officer's conduct at the time of the alleged violation.[13] Again, there is no testimony from the officers refuting Hunt's allegations. Hunt's uncontradicted assertions create a fact-questions that the officers acted unreasonably.

In connection with Defendants Scott and Wilson, the Order read:

> Hunt submitted sufficient evidence to sustain his § 1983 claims against Scott, Richardson, and Wilson. "If an officer alleges conduct by an arrestee giving rise to probable cause and those facts are undisputed, the officer is entitled to qualified immunity. If, however, the arrestee challenges the officer's description of the facts and presents a factual account that would not permit a reasonable officer to make an arrest, then there is a material factual dispute precluding summary judgment."[14] Hunt asserts that the arrest warrant was based on false, second-hand information, which the officers knew or should have known was unreliable. There is no testimony from these officers countering Hunt's charges. Hunt's uncontradicted allegations create a material factual dispute.

---

[11]Doc. No. 207.

[12]Service of summons on Defendant Greer is still pending.

[13]Doc. No. 207.

[14]*Hill v. Scott*, 349 F.3d 1068, 1071-72 (8th Cir. 2003) (citing *Arnott v. Mataya*, 995 F.2d 121, 123-24 (8th Cir.1993)).

On January 22, 2008, the remaining Defendants filed a Second Motion for Summary Judgment.[15]

## III. DISCUSSION

### A. Defendant Thomas.

Plaintiff alleges that Defendant Thomas violated his Fourth and Fourteenth Amendment rights by illegally searching and detaining Plaintiff.[16] The alleged violations took place on January 21, 2003, when Plaintiff claims he was stopped and searched at gun point without cause, and on August 19, 2003, when Plaintiff claims Defendant Thomas threatened to arrest Plaintiff for allegedly interfering in a governmental operation.[17]

1. The Detention

"A police officer may stop and briefly detain an individual whose behavior reasonably causes suspicion of criminal activity."[18] "The Defendant's 'reasonable suspicion' must be based on objective, articulable facts and reasonable inferences drawn from all the circumstances surrounding the suspect's behavior."[19] An officer may draw on his experience and training in making conclusions about the circumstances.[20] Single, innocent facts added together can result in

---

[15]Doc. No. 246.

[16]Doc. No. 72.

[17]*Id*.

[18]*Fields v. Omaha*, 810 F.2d 830, 835 (8th Cir. 1987) (citing *Terry v. Ohio*, 392 U.S. 1 (1968)).

[19]*Id*. (citing *Terry v. Ohio*, 392 U.S. 1, 27, 31 (1968)).

[20]See *United States v. Ortiz-Monroy*, 332 F.3d 525, 529 (8th Cir. 2003).

reasonable suspicion.[21] The Eighth Circuit has found that even without reasonable suspicion, seizures of less than ten minutes are minimal intrusions, and not unreasonable seizures.[22]

Defendant Thomas asserts Plaintiff was walking home through a high-drug and high-crime area.[23] Defendant Thomas stopped Plaintiff because several robberies and thefts had taken place in the area,[24] and Plaintiff was carrying a couple of bags of merchandise.[25] Defendant Thomas questioned Plaintiff, then let him go.[26] Defendant Thomas claims the stop lasted no more than two minutes.[27] Plaintiff alleges that the stop took longer, but provided no information as to how long he thinks Defendant Thomas detained him.[28]

Based on the record, Defendant Thomas had reasonable suspicion to question Plaintiff. Even if Defendant Thomas did not have reasonable suspicion, the record does not support a conclusion that the stop took more than ten minutes. Because Defendant Thomas had reasonable suspicion and detained Plaintiff only very briefly, no constitutional violation occurred.

---

[21]*United States v. Maltais*, 403 F.3d 550, 555 (8th Cir. 2005).

[22]*United States v. Robinson*, 455 F.3d 832, 834 (8th Cir. 2006) (citing *United States v. Alexander*, 448 F.3d 1014, 1017 (8th Cir. 2006); *United States v. Martin*, 411 F.3d 998, 1000-02 (8th Cir. 2005)).

[23]Doc. Nos. 248, 257. Plaintiff contested knowing that the area where he was walking was a high-crime area, but Plaintiff did not contest the classification of the area as high-crime. Doc. No. 257.

[24]Doc. No. 248.

[25]*Id*.

[26]*Id*.

[27]*Id*.

[28]Doc. No. 257.

2. Interfering With Governmental Operations

A person obstructs governmental actions when the person: knowingly obstructs, impairs, or hinders the performance of any governmental function . . . ."[29] The Arkansas Court of Appeals found obstruction of governmental operations when an individual's actions hindered an officer's ability to conduct a field sobriety test during a traffic stop.[30]

Plaintiff alleges that while he was standing with other individuals in a neighbor's front yard, Defendant Thomas threatened to arrest Plaintiff for observing a traffic stop Defendant Thomas made.[31] Defendant Thomas maintains Plaintiff yelled inciting comments;[32] Plaintiff denies those allegations.[33] "Neighbors were being blocked by Defendant Thomas [sic] car and could not pull into their yard or get by and they sat in the street and witnessed the entire event."[34] The road was "blocked and traffic could not pass from either direction."[35] Defendant Thomas allegedly turned to Plaintiff and "shouted out to . . . go on back down to the Brick-house or he would be arrested."[36] Onlookers could have hindered Defendant Thomas's performance of a governmental function. Thus, Defendant Thomas had reason to warn Plaintiff that if Plaintiff did

---

[29]Ark. Code Ann. § 5-54-102(a). The statute is titled "Obstructing governmental operations," A person acts "knowingly" when "he . . . is aware that his or her conduct is of that nature or that the attendant circumstances exist" or "he . . . is aware that it is practically certain that his or her conduct will cause the result." Ark. Code Ann. § 5-2-202(2).

[30]*Kelley v. State*, 75 Ark. App. 144, 146-47 (2001).

[31]Doc. No. 257.

[32]Doc. No. 248.

[33]Doc. No. 257, Ex. E. Affidavit of Alvin Long.

[34]*Id*.

[35]*Id*.

[36]*Id*.

not "go back down to the Brick-house,"[37] Plaintiff would be arrested for interfering with governmental operations.

A state official is entitled to qualified immunity as long as his "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[38] The initial inquiry is whether, taken in the light most favorable to the allegedly injured party, the facts show that a state official violated a constitutional right.[39] If a constitutional right has been violated, the next step is to determine if that right was clearly established at the time of the violation.[40]

Even if Defendant Thomas's actions were unconstitutional, he is entitled to qualified immunity. Under the circumstances, no reasonable officer would have understood that it violated an individual's constitutional right to tell the onlooker he would be arrested for interference if he did back away. Because Defendant Thomas did not violate Plaintiff's constitutional rights, summary judgment in connection with Defendant Thomas is GRANTED.

**B. Defendant Wilson**

When an individual is named in an arrest warrant, an officer has probable cause for the individual's arrest.[41] An affidavit in support of a warrant "need only establish the probability of such activity; proof beyond a reasonable doubt is not required."[42] Even when an informant lied,

---

[37]*Id*.

[38]See *Scott v. Harris*, 127 S. Ct. 1769, 1774 (2007).

[39]*Id*.

[40]See *id*.

[41]*Luckes v. County of Hennepin*, 415 F.3d 936, 939 (8th Cir. 2005).

[42]*United States v. Bentley*, 706 F.2d 1498, 1504 (8th Cir. 1983) (citing *Spinelli v. United States*, 393 U.S. 410, 419 (1969)).

probable cause exists as long as "the affiant accurately represented what was told him."[43] Further, a court can apply the *Leon* good faith exception and decide whether an officer reasonably relied on a warrant before the court reaches the issue of probable cause.[44] Under the *Leon* exception, an arrest based on a defective warrant does not violate the Fourth Amendment when the arresting officer acted in good faith reliance on the warrant, except when "the magistrate judge issuing the warrant was misled by statements made by the affiant that were false or made 'in reckless disregard for the truth.'"[45]

Plaintiff alleges that Defendant Wilson arrested Plaintiff on June 21, 2004, pursuant to an arrest warrant containing allegations Defendant Wilson should have known were not true.[46] The affidavit in support of the warrant was signed by a Marcel Williams.[47] Mr. Williams's affidavit reads: "Robert Grant came by my house pushing a law mower. I recognized the mower as being mine. I talked with the man, Robert Grant, and he stated he bought the mower from Kenneth Hunt for $20."[48] In his response to summary judgment, Plaintiff included an affidavit from Robert Grant in which Mr. Grant denies ever having made that statement.[49] Neither Defendant nor Plaintiff included an affidavit from Marcel Williams. Plaintiff asserts that the arrest violated

---

[43]*United States v. Garofalo*, 496 F.2d 510, 511 (8th Cir. 1974).

[44]*United States v. Guzman*, 507 F.3d 681, 685 (8th Cir. 2007).

[45]*Id*. (quoting *United States v. Leon,* 468 U.S. 897, 920-21 (1984)). The *Leon* good faith exception applies to arrest warrants. *United States v. Johnson,* 121 F.3d 1141, 1143 (8th Cir. 1997).

[46]Doc. No. 72.

[47]Doc. No. 256.

[48]*Id*.

[49]Doc. No. 256, Ex. L.

his constitutional rights.[50] Defendant Wilson denies being present during the arrest.[51] Defendant Wilson's name, however, does appear in the record in connection with the arrest.[52]

Even if Defendant Wilson was present during Plaintiff's arrest, Plaintiff presented no evidence that Defendant Wilson knew, or should have known, information in the affidavit was allegedly false. Plaintiff produced no evidence that Mr. Williams inaccurately represented what he had been told; Plaintiff produced only an affidavit from Mr. Grant saying that he did not say he bought a lawnmower from Kenneth Hunt. Plaintiff did not produce evidence that Mr. Williams lied or acted in wreckless disregard of the truth. Plaintiff also alleges a conspiracy among various Defendants to harass him,[53] but offers no facts in support of that allegation.[54] "Conclusory [statements], standing alone, cannot create a genuine issue of material fact precluding summary judgment."[55] Defendant Wilson's actions did not violate Plaintiff's constitutional rights.

A state official is entitled to qualified immunity as long as his "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[56] The initial inquiry is whether, taken in the light most favorable to the allegedly injured

---

[50]Doc. No. 72.

[51]Doc. No. 248, Ex. F.

[52]*Id*.

[53]Doc. No. 256.

[54]In the previous Summary Judgment Order, the Court also found that "Hunt has not provided any facts supporting his conspiracy claims." Doc. No. 207.

[55]*Rose-Maston v. NME Hosps*., 133 F.3d 1104 (8th Cir. 1997).

[56]See *Scott v. Harris*, 127 S. Ct. 1769, 1774 (2007).

party, the facts show that a state official violated a constitutional right.[57] If a constitutional right has been violated, the next step is to determine if that right was clearly established at the time of the violation.[58] "Police officers seeking arrest warrants are entitled to qualified immunity for their actions unless 'the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable . . . .'"[59] Even if Defendant Wilson violated Plaintiff's constitutional rights, he is entitled to qualified immunity because a reasonable officer in Defendant's position would not have known that arresting a person based on a facially valid warrant is a constitutional violation.

Defendant Wilson did not violate Plaintiff's constitutional rights. Accordingly, summary judgment in favor of Defendant Wilson is GRANTED.

**C. Defendant Scott**

Plaintiff alleges Defendant Scott violated Plaintiff's constitutional rights on two occasions: (1) during a search on September 23, 2003; and (2) during an arrest on June 21, 2004.

1. The Search

Plaintiff alleges that on September 23, 2003, Defendant Scott had Plaintiff place his hands on the hood of Defendant Scott's patrol car, and that Defendant Scott searched Plaintiff's

---

[57]*Id*.

[58]See *id*.

[59]*Thompson v. Reuting*, 968 F.2d 756, 761 (8th Cir. 1992) (citing *Malley v. Briggs*, 475 U.S. 335, 344-45 (1986) (not personally interviewing a witness listed in an affidavit does not show that a reasonably trained officer should have known the affidavit did not establish probable cause)).

bag without cause.[60] Defendant Scott claims he did not stop and search Plaintiff on September 23, 2003.[61] This dispute creates a genuine question of material fact. Summary judgment in connection with Defendant Scott's alleged search of Plaintiff on September 23, 2003, is DENIED.

2. The Arrest

Plaintiff alleges Defendant Scott arrested him on June 21, 2004, in violation of his constitutional rights.[62] This is the same arrest discussed above in connection with Defendant Wilson. Because the facts and allegations are the same, the conclusion here is the same as well -- no constitutional violation occurred in connection with the arrest.

**D. Defendants Smith, Bond, and Kennedy**

Plaintiff alleges that Defendants Smith, Bond, and Kennedy arrested and strip searched him in violation of his constitutional rights. Plaintiff was arrested by Defendant Smith on December 20, 2000, for driving while intoxicated.[63] Plaintiff alleges that he was neither intoxicated nor near a car when Defendants Smith, Bond, and Kennedy arrested him.[64] Plaintiff maintains that he was simply walking down the street when he was arrested.[65] Defendant Smith asserts that Plaintiff was driving toward him, crossed the center line, and nearly hit Defendant

---

[60]Doc. No. 256. Plaintiff also provided the affidavit of a witness who says she saw the search. Doc. No. 257, Ex. I.

[61]Doc. No. 248-8, Ex. G.

[62]Doc. No 72.

[63]Doc. No. 256.

[64]Doc. No. 257.

[65]*Id.*

Smith's patrol car.[66] Defendant Smith claims he had to swerve to avoid being hit.[67] Defendant Smith alleges that he then saw Plaintiff pull in a driveway, and that he pulled in the driveway behind Plaintiff.[68] Defendant Smith asserts that Plaintiff then got out of his truck.[69] Plaintiff apparently then walked up to Defendant Smith's car.[70] Defendant Smith's arrest report listed the offenses suspected or charged as: DWI 2d, refusal to submit, driving left of center, and no proof of insurance.[71] Defendant Bond maintains he arrived at the scene after the arrest; Defendant Kennedy claims he never was at the scene.[72] An attachment to the arrest report reads as follows:

> I advised the driver that I was not Sgt. Padgettt. The driver turned and started to stager [sic] off and I got out of the patrol car and told him to come here. When the driver got to me I could smell a strong oder [sic] of a alcoholic drink . . . . I ask [sic] the driver for his drivers license. As he fumbled around for his wallet he stumbled and almost fell. When he handed me his D.L. I verified him as Kenneth Jerome Hunt . . . . I then ask [sic] if he had been drinking and he stated 'it dont matter I was not driving'. I tried to do a battery of filed sobriety tests on Mr. Hunt but due to his state of intoxication I was in fear for his safety. I advised Mr. Hunt that he was under arrest for DWI. Mr. Hunt was transported to Forrest City Police Dept. For a bac. test at which he refused. . . .His Toyota truck was towed to Tri-County.

---

[66]Doc. No. 248.

[67]Doc. No. 248.

[68]Doc. No. 248.

[69]Doc. No. 247.

[70]See Doc. No. 254, Ex. 1.

[71]Doc. No. 257, Ex. A-1.

[72]Doc. No. 248, Exs. B, C. The Marianna Police Department Radio and Phone Log indicates that three officers were at the scene. Doc. No. 257, Ex. A.

On April 15, 2002, Plaintiff was found guilty by the Marianna Municipal Court of driving left of center and refusing to submit to a breath test.[73] The Mariana Municipal Court dismissed the DWI charges.[74]

> In order to recover damages for 'harm caused by actions whose unlawfulness would render a conviction or sentence invalid,' a section 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by an authorized state tribunal, or called into question by a federal court's issuance of a writ of habeas corpus.[75]

Dismissal of the 1983 claim is appropriate if the plaintiff cannot meet that requirement.[76]

Plaintiff challenges Defendants' probable cause in arresting him for DWI. However, the DWI charge did not arise based on isolated events. The DWI charge was but one of four charges that all stemmed from the same facts. To find that there was no probable cause in connection with the DWI charges would be to find that there was no probable cause in connection with the driving left of center offense and refusing to submit offense. A finding that there was no probable cause to arrest Plaintiff in connection with driving left of center or refusing to submit would imply the invalidity of Plaintiff's conviction of those violations. Because Plaintiff has not shown that his conviction or sentence was reversed on appeal, expunged by executive order, or declared invalid by a tribunal, dismissal here of the 1983 claim is appropriate.

---

[73]Doc. No. 254, Ex. 2.

[74]Doc. No. 257, Ex. H.

[75]*Abdullah v. Minnesota*, No. 06-4142, 2008 U.S. App. Lexis 2448 (8th Cir. Feb. 4, 2008) (citing *Heck v. Humphrey*, 512, U.S. 477, 486-87 (1994).

[76]*Id*.

Further, under *Rooker-Feldman*, federal courts, other than the United States Supreme Court, do not have subject matter jurisdiction to hear challenges to state court judgments.[77] If a "federal claim succeeds only to the extent that the state court wrongly decided the issue before it," the claim may not be heard by the federal court.[78] The *Rooker-Feldman* Doctrine is jurisdictional and "may be raised sua sponte."[79] To find that there was no probable cause for Plaintiff's arrest would be the same as finding Plaintiff's state court convictions were wrongly decided.

Accordingly, summary judgment in favor of Defendants Smith, Bond, and Kennedy is GRANTED.

**IV. SUMMARY**

Summary judgment is GRANTED on Plaintiff's claims against Defendants Thomas, Wilson, Smith, Bond, and Kennedy. With respect to Defendant Scott, summary judgment is GRANTED on the unlawful arrest claim, but DENIED in connection with Plaintiff's illegal search claim.

IT IS SO ORDERED this 19th day of February, 2008.

/s/Wm. R. Wilson, Jr.
UNITED STATES DISTRICT JUDGE

---

[77]*Lemonds v. St. Louis County*, 222 F.3d 488, 492 (8th Cir. 2000).

[78]*Id.*

[79]*Id.*